MUTUAL LIFE INS. CO. OF NEW YORK v. HODNETTE.

(Court of Civil Appeals of Texas. Austin. April 17, 1912. Rehearing Denied May 15, 1912.)

1. TRIAL (§ 334*)—VERDICT—CONSTRUCTION—PRINCIPAL AND SURETY.

A verdict for a certain sum "and interest included at 5 per cent. per annum" is for such sum and interest thereon from maturity of the claim therefor, and does not mean that interest up to the trial is included in such sum.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 785; Dec. Dig. § 334.*]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Erroneous admission of hearsay, similar evidence having been admitted without objection, and being probable that without it the verdict would not have been different, will be considered harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221-4224; Dec. Dig. § 1064.*]

3. TRIAL (§ 228*)—INSTRUCTIONS—CLERICAL ERRORS.

An instruction is not open to the objection of being meaningless because of the use of the word "signing" therein; it being evidence from inspection that the word is a clerical error, and should be read "signed," which gives it meaning.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 509-512, 526; Dec. Dig. § 228.*]

4. TRIAL (§ 295*) — INSTRUCTIONS — CONSIDERATIONS AS A WHOLE.

On the question whether the jury could have been misled by a paragraph of charge, the charge is to be considered as a whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703-717; Dec. Dig. § 295.*]

5. INSURANCE (§ 84*)—INSURANCE AGENTS—RIGHT TO COMMISSIONS.

A policy of an insurance company, issued by the general office, and sent to a local office, where, according to the company's rules, it was held till the company had finished its investigation of the applicant, after doing which, it, not being satisfied with the risk, declined it and recalled and canceled the policy, no premium ever being paid on it, was never in force, so as to entitle the agent to commissions.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 111-114; Dec. Dig. § 84.*]

6. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—REFUSAL OF INSTRUCTIONS.

Refusal of a peremptory instruction for defendant on certain of plaintiff's claims was harmless; the verdict being only for the amount of the other claims.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225-4228; Dec. Dig. § 1068.*]

7. EVIDENCE (§ 318*)—HEARSAY—LETTERS.

On the issue of whether plaintiff in selling defendant's policies made false representations to the purchasers, their letters to defendant are hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193-1200; Dec. Dig. § 318.*]

8. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

Information as to whether renewal premiums on policies had been paid, being peculiarly within the knowledge of the insurance company, and it being very easy for it to show that policies had not been renewed, its failure to do so, in an action by an agent for commissions on renewals, is ample evidence that they were renewed, and that it was not harmed by the instruction that, on proof by the agent that the policies were issued and put in force by the company, the burden was on it to show that the premiums were not paid by the policy holders.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221-4224; Dec. Dig. § 1064.*]

Error from Travis County Court; R. E. White, Judge.

Action by M. G. Hodnette against the Mutual Life Insurance Company of New York. Judgment for plaintiff. Defendant brings error. Affirmed on condition of remittitur.

Locke & Locke, of Dallas, and Gregory, Batts & Brooks, of Austin, for plaintiff in error. Hart & Patterson and W. P. Allen, all of Austin, for defendant in error.

JENKINS, J. Defendant in error was employed by the plaintiff in error as special agent to interview the policy holders of said company with the view of getting additional insurance from them, in which event the parties were to execute premium notes and deposit their old policies with the company as collateral security. Defendant in error set out the various policies which he claims to have sold under this contract, and by virtue of which he was to have received specified commissions and an additional 5 per cent. on renewals, and alleged that the same had never been paid. Plaintiff in error replied as to such policies that they were obtained by fraudulent misrepresentations made by defendant in error as to the policies sold, and that some of the premium notes were forged. Defendant in error sued for $993.10, and recovered judgment for $868.89.

[1] 1. The first assignment of error is that the judgment is not authorized by the verdict. The verdict was as follows: "We, the jury, find for the plaintiff, M. G. Hodnette, in the sum of $868.89 and interest included at 5 per cent. per annum." The judgment was for $868.89, with interest thereon from the date of the filing of the suit at the rate of 5 per cent. per annum. Suit was filed September 25, 1909, and judgment was rendered November 9, 1910. We are of the opinion that the verdict is sufficient to sustain the judgment. It is contended that the jury meant to include in their finding all interest due appellee up to the date of the trial. If so, the words "principal and interest included at 5 per cent. per annum" were surplusage. A verdict, like any other written instrument, should be so construed, if possible, as to give meaning to every word in it. We

think the proper construction of said verdict is that the jury found for plaintiff $868.89 principal, and included in their finding in his favor interest from the maturity of the same at the rate of 5 per cent. per annum. In State v. Montello Salt Co., 34 Utah, 458, 98 Pac. 549, it was held that the words "and including" were words of enlargement, equivalent to the words "and also." See, also, U. S. v. Pierce, 147 Fed. 199, 77 C. C. A. 425; Hiller v. U. S., 106 Fed. 73, 45 C. C. A. 229; In re Goetz's Will, 71 App. Div. 272, 75 N. Y. Supp. 750.

[2] 2. Plaintiff in error assigns error upon the admission of the testimony of B. S. Dickinson, wherein he stated what S. B. Love, the manager of the Memphis agency of the defendant, said in a conversation with him in November, 1909, with reference to the conduct of the defendant in error in obtaining insurance for plaintiff in error. Love was a general manager of plaintiff in error, and made one of the contracts under which defendant in error sold the policies in controversy. The objection to said testimony is that it is hearsay. If such contention be correct, we do not think that it would require a reversal of this case, for the reason that said testimony incidentally tended to show that defendant in error had not been guilty of misrepresentation in obtaining the policies, and it appears, as plaintiff in error contends, that Love probably had no direct information upon this question. All of the parties who did have direct information upon this question testified in this case, and the issue as to whether defendant in error made fraudulent representations in order to obtain the policies, or whether the premium notes were forgeries, were submitted to the jury in the charge of the court. Their verdict amounts to a special finding that there was no fraudulent misrepresentation in obtaining said policies, and that none of the notes was forged. We do not think that their verdict would have been different had the testimony of Love been excluded, nor do we think that upon another trial, with such testimony excluded, the verdict upon the other testimony in this case would be different. Other testimony with reference to Love, as well as other general managers of plaintiff in error under whom defendant in error worked, of a similar character to that here complained of, was given without objection. We are not prepared to say, as seems to be held in some of the cases, that the admission of illegal testimony without objection will operate as a waiver of objection to like testimony subsequently offered; but we think a failure to object to such testimony may be looked to by this court as evidence that the same, in the opinion of the attorneys trying the case, was not particularly harmful. Such, at least, is our opinion as to this testimony.

[3] 3. The court, among other things, charged the jury as follows: "You are further instructed that if a person who can read and write signs a written instrument, either after he has read it, or without reading it, he cannot in law avoid the same upon the ground that he did not understand it; and if you believe from the evidence in this case that any and all of the persons signing the loan agreement in controversy in this case, if they did so, then you are instructed that they are not entitled in law to rescission of their contracts with the defendant." It is objected that this charge is meaningless. It is evident by an inspection of the same that the word "signing" is a clerical error, and should be read "signed." When so read, it conveys the idea evidently intended to be conveyed by the court, and which the jury doubtless understood.

[4] This paragraph of the charge, taken by itself, is not the law; that is to say, it is not true, under all circumstances, that when a party who can read and write signs an instrument without reading it, he cannot avoid the same upon the ground that he did not understand it. It would not be so if his failure to read the instrument was caused by the fraudulent representations of the party obtaining his signature, and he relied upon such statements, which fact was known to the party obtaining such signature, and that such statements were made with the intent to procure such signature to said instrument under a false apprehension as to its contents. However, this paragraph of the charge concludes as follows: "You are instructed as to such insurance contracts to find in favor of the plaintiff, unless you find against him on some part of the instructions above given you, or herein given you." In a previous part of the charge the jury were told that: "If you believe from the evidence that the plaintiff made false and unauthorized misrepresentations to the persons whose policies the defendant claims it was required to cancel and rescind, if it did, and that the defendant was required to and canceled policies named by it in its answer, by reason of said false and unauthorized misrepresentations, if any, on the part of plaintiff, then you are instructed to find for the defendant as to such commissions." The entire charge should be construed together; and in this case we think that, when the jury were told to find for the plaintiff as to the instruments signed by the parties whom the undisputed testimony showed could read and write, unless they found against him on some other part of the instructions, they must have clearly understood that if defendant in error made false and unauthorized representations to the persons who in this case were claiming that they signed said policies under a misapprehension, they could not find for defendant in error upon the ground that such parties could read and write.

[5] 4. Plaintiff in error requested the court to give the following charge: "You are in-

structed that the plaintiff is not entitled to recover the commission of $26.86 claimed on policy No. 1,768,912, Swain, and you will therefore return no verdict in his favor therefor." We think it was error for the court to refuse this charge. The undisputed testimony shows that this policy was never in force. It was issued by the general office and sent to the Memphis office, where, according to the rules of the company, it was held until the company had finished its investigation of the applicant. The company, not being satisfied with the risk, recalled this policy for cancellation, declining the risk, and the policy was canceled. There was no premium paid on said policy.

[6] 5. The plaintiff in error asked a peremptory instruction in its favor as to the policies of Henley, Shaddock, and Pahlen. We think the evidence clearly shows that these policies were never in force, and that defendant in error was not entitled to recover as to them. Defendant in error suggests that, if we should so hold, he enters a remittitur as to said three policies. We, however, do not believe that there was material error in refusing said charges, and do not require a remittitur for the reason that it is evident that the jury did not allow defendant in error anything for these policies. As above stated, defendant in error brought suit for $993.10; the verdict was for $868.89, $124.21 less than the amount sued for. The amount claimed on these three policies was $124.20, from which we think it is evident that the jury did not allow anything for either of these three policies.

6. Plaintiff in error assigns error upon the refusal of the court to give peremptory instructions as to the policies issued to Harding, Smith, Jones, and Johnson. It is the contention of plaintiff in error that the undisputed testimony showed that the premium notes given for these policies were not signed by the respective beneficiaries therein. We think the evidence was sufficient to raise an issue of fact as to these matters, and that the court properly submitted same to the jury, and did not err in refusing the peremptory instructions requested.

[7] 7. We think the court did not err in excluding the correspondence between Harding and the agent of the company, and the correspondence between Smith and the agent of the company, wherein they stated to such agents that defendant in error made fraudulent representations to them as to the nature of the policies sold them. This evidence was hearsay.

[8] 8. The court, among other things, instructed the jury as follows: "You are further instructed that in an action by an insurance agent for commissions on renewal premiums, the burden of proof is on the insurance company to show that the premiums have not been paid by the policy holders, upon proof by the agent that the policies were issued and put in force by the insurance company." We do not think there was any error in this charge, for the reason that although it may have been in the power of defendant in error, by taking the deposition of the different policy holders or of the agents of the company, to prove that the renewal premiums had been paid, if such was the fact, yet information as to this fact was peculiarly within the knowledge of the plaintiff in error; and if said policies had not been renewed, it would have been very easy for it to have shown such fact. Its failure to attempt to do so, we think, is ample evidence that the policies were renewed, and that plaintiff in error has suffered no injury by this charge.

For the error in failing to peremptorily instruct in favor of plaintiff in error as to the Swain policy, the judgment herein will be reversed, unless the defendant in error, within 10 days from the date hereof, shall file in this court a remittitur in the sum of $26.86, in which event the judgment of the trial court will be affirmed.

KEY, C. J., being disqualified, did not sit in this case.